UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NAPA VALLEY LIMONCELLO LLC, et al.,

Plaintiffs,

v.

NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,

Defendant.

Case No. 24-cv-03243-HSG

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO EXCLUDE EXPERT TESTIMONY**

Re: Dkt. No. 42, 43, 44

Pending before the Court are Defendant Nationwide Agribusiness Insurance Company's ("Nationwide" or "Defendant") motion for summary judgment, Dkt. No. 42, and motions to exclude expert testimony, Dkt. Nos. 43, 44. The Court held a hearing on the motions on December 11, 2025. *See* Dkt. No. 55. Having carefully reviewed the parties' arguments, the Court **DENIES** Defendant's motion for summary judgment and **GRANTS IN PART AND DENIES IN PART** Defendant's motions to exclude expert testimony.

## I.    BACKGROUND

Plaintiffs Napa Valley Limoncello LLC d/b/a Napa Valley Distillery and Napastak Cellars (collectively "NVD" or "Plaintiffs") own and operate a distillery in Napa, California, where they make whisky, bourbon, and other spirits aged in wooden barrels. Dkt. No. 1-1 ("Compl.") ¶ 8. In 2020, severe wildfires broke out across the region. *Id.* ¶ 9. NVD alleges that wildfire smoke penetrated the "porous" wooden barrels, "causing spoliation of the spirits." *Id.* ¶¶ 9, 10. NVD's insurance policy with Nationwide provided coverage for "direct physical loss of or damage to Covered Property." Dkt. No. 42-2, Declaration of John Holland ISO Nationwide's MSJ ("Holland

Decl.") ¶ 4, Ex. A at 33.[1]  In August 2020, NVD submitted a claim for business income loss and damage to "certain spirits, housed in wooden barrels[,] as well as the barrels used to house these spirits" at NVD's distillery.  Compl. ¶¶ 9–13.  In January 2022, Nationwide denied NVD's coverage claim after it conducted an investigation and determined there was no evidence of direct physical loss or damage.  *See* Dkt. No. 42-1 at 11–13.  NVD sued, asserting causes of action for breach of contract, and breach of the covenant of good faith and fair dealing.  *See generally* Compl.  NVD also seeks punitive damages.  *Id.*

Whether NVD's spirits and barrels were damaged by the 2020 wildfires is the central issue in this case.  NVD contends that they were; Nationwide asserts they were not.  Both parties conducted testing and tastings to support their respective positions.  Relevant here are the reports and declarations of Plaintiffs' proffered experts: Mark Newman, a tasting and distillation expert; Donald Snyder and David Girbovan, economists; Shaun Loeffelman, a scientist; Brian Eblen, an expert on contamination of foodstuffs; and Janice Ramsay, an attorney proffered to testify regarding Nationwide's claims handling in support of NVD's bad faith claim.  Complicating the credibility of certain experts' opinions, another fire broke out at NVD's distillery in 2024 when a car crashed into the building that housed the same barrels at issue in NVD's 2020 coverage claim, setting it ablaze.[2]

Before the Court can consider Nationwide's motion for summary judgment, it must determine what evidence is available to Plaintiff.  Thus, the Court first addresses Nationwide's motions to exclude the testimony of NVD's expert witnesses.

---

[1] Unless otherwise indicated, all page numbers reference the page numbers in the ECF header.

[2] Coverage for the 2024 fire is not at issue here.  At that time, NVD was insured by Chubb.  Dkt. No. 42-4, Declaration of Mordecai ISO Nationwide's MSJ ("Boone Decl. ISO MSJ") ¶ 13, Ex. L.  After the 2024 fire, Plaintiffs submitted a claim alleging smoke damage to the same inventory for which it claimed damage under its policy with Nationwide in 2024.  *Id.* ¶ 14, Ex. M ("Hartunian Dep.") at 91:25–92:3; 97:13–18.  Plaintiffs had obtained coverage from Chubb in 2023 after representing they had a "clean" five-year loss history and a $5,000,000 average/maximum total stock.  *Id.* ¶ 13, Ex. L.  Chubb investigated, Nationwide contends, much in the same manner it did.  Dkt. No. 42-1 at 17.  When Chubb discovered that Plaintiffs had sued Nationwide for coverage regarding the same inventory at issue in its 2024 claim, and that NVD's alleged loss exceeded the represented $5,000,000 stock maximum, Chubb rescinded Plaintiffs' insurance coverage for material misrepresentation and concealment. Boone Decl. ISO MSJ ¶ 13, Ex. L.

United States District Court
Northern District of California

## II.    MOTIONS TO EXCLUDE EXPERTS

### A.    Legal Standards

#### i.    Rules 26 and 37

Federal Rule of Civil Procedure 26 requires that a party's expert witness disclose, in a written report, "a complete statement of all opinions the witness will express" at trial, and the basis and reasons for them.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i).  Rebuttal disclosures of expert testimony are "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).  Rule 26 further provides that these disclosures be made at the times directed by the Court.  *See* Fed. R. Civ. P. 26(a)(2)(D).  Rule 37, in turn, provides that if a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).  The Court has "particularly wide latitude . . . to issue sanctions under Rule 37(c)(1)."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

#### ii.    Rule 702

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Expert testimony is admissible under Rule 702 if it is both relevant and reliable.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue."  *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (quotation omitted).  Under the reliability requirement, the expert

testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565.  To ensure reliability, the Court "assess[es] the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564.

### B.     Mark Casey Newman

NVD designated Mr. Newman of Silent Spirits as its distillation expert.  Mr. Newman has worked in the distillation industry for nearly ten years, gaining significant experience in the production and tasting of aged spirits.  *See* Dkt. No. 43-2 ("Boone Decl. ISO Mot. to Exclude Plaintiff's Tasting Expert and Economists") ¶ 3, Ex. B ("Newman Opening Report").  He authored two reports for this lawsuit: an opening report and a report to rebut the opinion of Dr. Gregory Miller, Nationwide's scientific expert.  *See id.*; *see also id.* ¶ 4, Ex. C ("Newman Rebuttal Report").  In addition to these reports, Mr. Newman submitted a declaration opposing Nationwide's motions for summary judgment and to exclude expert testimony.  Dkt. Nos. 45-9, 47-7 ("Newman Decl.").  Nationwide contends that Mr. Newman's opinions disclosed in the reports, and in his newly-filed declaration, must be excluded.  The Court agrees.

#### i.     Opening Report

Mr. Newman's opening report consists of a single page letter summarizing his perception of smoke taint in NVD's stock, followed by a spreadsheet detailing individualized findings for the barrel samples he tasted.  *See* Newman Opening Report.  Mr. Newman's letter states that "[o]f the 108 barrel samples received, 83.3% (90 barrels) were found to exhibit clear and identifiable signs of smoke taint."  *Id.*  Mr. Newman concludes "that exposure to smoke has resulted in a significant and widespread product contamination" of smoke taint in NVD's product.  *Id.*  Nationwide argues the report should be excluded in its entirety for three reasons.

*First,* Nationwide argues that Mr. Newman's opening report is "inherently unreliable," because it is based on his tasting of samples on April 24, 2025, less than a year after the 2024 fire occurred at the distillery.[3]  Dkt. No. 43 at 12.  Mr. Newman was not even aware of the 2024 fire

---

[3] Nationwide contends that Plaintiffs' counsel acknowledged that any tasting or testing results after the 2024 fire were unreliable, and based on this mutual understanding, Nationwide did not

United States District Court
Northern District of California

when he tasted the samples.  Boone Decl. ISO Mot. to Exclude Plaintiff's Tasting Expert and Economists ¶ 5, Ex. D ("Newman Dep.") at 79:13–19.  *Second*, Nationwide argues the report should be excluded because it "was marked by subjectivity, messiness, and inconsistency."  Dkt. No. 43 at 15.  Nationwide contends the report is inherently subjective because it is based on Mr. Newman's own sensory analysis, and because it incorporates numerous mistakes in photographing, sampling, documenting, and disposing of samples.  Dkt. No. 50 at 17.  *Third,* Nationwide argues that Mr. Newman cannot testify about what caused the smoke taint, because that goes beyond his qualifications as a witness.  Dkt. No. 43 at 14.  At his deposition, Mr. Newman directly admitted that he did not know "when or how the smoke allegedly entered the spirits."  Dkt. No. 43 at 14; *see also* Newman Dep. at 77:16–78:5.  And because Mr. Newman is not a scientist, Nationwide argues, he should not be permitted to opine on how smoke could penetrate a barrel.  *See* Dkt. No. 43 at 15.

NVD contends that the timing of Mr. Newman's tasting goes to weight and credibility, not to the admissibility of his opinions.  Dkt. No. 45 at 5.  NVD also argues that Mr. Newman's testimony is based not on scientific knowledge, but on "specialized knowledge and knowledge acquired by experience."  *Id.*  Finally, NVD asserts that Mr. Newman's opening report (unlike the rebuttal report) does not opine on causation.  *Id.*

Having reviewed Mr. Newman's opening report, the Court finds that it does not meet the requirements of Rule 26.  *See* Fed. R. Civ. P. 26(a)(2)(B) (an expert report "must contain" "a complete statement of all opinions the witness will express *and the basis and reasons for them*") (emphasis added).  The report just summarily presents conclusions.  *See* Newman Report.  And Mr. Newman provides no detail whatsoever about the methodology he used to reach those

---

hire an expert to re-test or re-taste the samples.  In response, and without citing any case law, NVD argues that Nationwide is "estopped by laches" from arguing that any delay in obtaining Mr. Newman's testimony renders his testimony unreliable, because "Nationwide refused to order comprehensive taste testing when it had the opportunity and obligation to do so."  Dkt. No. 45 at 5.  The Court finds Plaintiff's laches argument obviously wrong.  As Nationwide points out, the defense of laches does not provide a basis to admit unreliable expert testimony: it is an affirmative defense available to a defendant against a plaintiff's claim.  *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 949 (9th Cir. 2001) ("Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights") (internal citations and quotations omitted).

United States District Court
Northern District of California

conclusions.  At the hearing, NVD's counsel suggested that Mr. Newman's experience, much like that of a sommelier, makes him qualified to testify to the presence of smoke taint.  But while an expert may rely on experience in forming his opinions, that does not relieve him of the obligation to use reliable principles and methods, apply them to the facts of the case, and, critically, "explain precisely how [he] went about reaching [his] conclusions" in the report.  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*").  A "bald assurance of validity is not enough." *Id.* at 1316.  Courts "must assure that the methods are adequately explained," *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002), and the Court is "vested with broad latitude to decide how to test an expert's reliability and whether or not an expert's relevant testimony is reliable." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 923 (9th Cir. 2017) (internal citations and quotations omitted).  As the Ninth Circuit said in *Daubert II*, "[w]e've been presented with only the expert['s] qualifications, [his] conclusions and [his] assurances of reliability.  Under *Daubert*, that's not enough."  43 F.3d at 1319.

And Mr. Newman's late-filed declaration does not fix the deficiency.  At the hearing, NVD claimed that Mr. Newman's declaration did nothing more than summarize facts already in the record.[4]  The Court disagrees.  The declaration, filed well after the close of discovery, offers new testimony articulating the methodology that Mr. Newman used to draw his conclusions: he employed the distilling industry's standard protocol and methodology for performing the taste tests, Newman Decl. ¶ 16; he diluted each sample to the product-ready proof, *id.* ¶ 17; and he compared each test sample he tasted to a pre-fire bottled version of the same spirit.  *Id.* ¶ 18.  Assuming without deciding that this information might have sufficiently explained Mr. Newman's methodology, critically, none of these details were in his opening report.  Under Rule 26, a party is "entitled to a *complete* disclosure of all opinions—not a sneak preview of a moving target." *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983 (N.D. Cal. 2014).  The Court finds that the declaration is a blatant attempt to belatedly lay the foundation for the opening report's

_____

[4] NVD's counsel also suggested that it filed Mr. Newman's declaration to spare the Court from needing to search through the record.  Just the opposite is true.  Each of the declarations filed by NVD required the Court to spend significant time verifying whether the experts' testimony was in fact originally presented in the experts' respective reports.

conclusions.  NVD has not demonstrated that the prior failure to disclose these details was harmless or substantially justified.

Mr. Newman's report simply fails to comply with the requirements of Rule 26.  And under Rule 37, the Court will not allow him to supplement the report with plainly untimely testimony. Accordingly, the Court excludes the opinions in Mr. Newman's opening report in their entirety. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

### ii.    Rebuttal Report

Nationwide also argues that Mr. Newman's report rebutting three points from the "detailed 51-page, 15-point scientific report" by Nationwide's expert, Dr. Gregory Miller, is subject to exclusion.[5]  Dkt. No. 45 at 17.  Nationwide contends that, as a self-admitted non-scientist, Mr. Newman is not qualified to rebut Dr. Miller's "Point 3," which posits that guaiacol and creosol thresholds are the defining indicators of smoke taint.  *Id.*  Nationwide also argues that Mr. Newman's rebuttal of Dr. Miller's "Point 5," comparing NVD's sample to other brands, is based on the unfounded assumption that NVD conducted a "rigorous, documented tasting process."  *Id.* at 18.  Finally, Nationwide argues that Mr. Newman's rebuttal of Dr. Miller's "Point 8" is also subject to exclusion for two reasons.  First, because Mr. Newman offers no basis for applying his theory about "angel's share" to smoke taint; and second, because he does not have specialized knowledge of diffusion.  *Id.*  NVD counters that "Newman repeatedly testified that his rebuttal opinions were based on the logical application of his specialized knowledge gained by experience." Dkt. No. 45 at 5.  The Court excludes the opinions in the rebuttal report in their entirety.

### a.  Point 3

Mr. Newman argues that Dr. Miller places too much emphasis on the relevance of guaiacol

---

[5] Neither party submitted a full copy of Dr. Miller's report for the Court's review.  The Court therefore relies on the parties' representations about Dr. Miller's report in characterizing it.

and creosol to indicate smoke taint, because Dr. Miller himself acknowledges that a taste test is the definitive indicator of smoke taint. Newman Rebuttal Report at 1. Mr. Newman goes on to state that the taste test performed on NVD's stock showed it was smoke tainted. *Id.* The Court finds that Mr. Newman's application of purported "logic" over "science" presents "lawyer argument dressed up as expert opinion." *Waymo LLC v. Uber Techs.*, Inc., No. C 17-00939 WHA, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017). While Mr. Newman identifies purported logical flaws in Dr. Miller's analysis, "such critiques are more appropriate for cross examination or closing argument, rather than being within the purview of a rebuttal expert" because "[t]he jury can draw these conclusions themselves . . . without the need for expert testimony." *Avila v. Ford Motor Co.*, 796 F. Supp. 3d 593, 598 (N.D. Cal. 2025) (internal quotations and citations omitted). Mr. Newman's rebuttal of Dr. Miller's third point is subject to exclusion for this reason alone. But the Court also excludes this rebuttal opinion for an additional reason: its purported basis is Mr. Newman's own conclusory sensory analysis, which the Court already excluded for lack of methodological rigor.

### b. Point 5

In his rebuttal of Point 5, Mr. Newman asserts that it is irrelevant that Dr. Miller compares NVD's spirits to brands like Laphroaig and Wild Turkey to suggest that the level of guaiacol and creosol fell within acceptable ranges. Newman Rebuttal Report at 1. Mr. Newman opines that those brands are designed to carry a peaty profile. *Id.* Mr. Newman goes on to state that the smoky character of NVD's barrels "was the result of uncontrolled wildfire exposure." *Id.* at 2. Mr. Newman provides no basis for this conclusion. Next, Mr. Newman opines that Dr. Miller is incorrect that professional sensory assessors "may be more suitable than producers / distillers" to make quality determinations. *Id.* This "misrepresents the role of distillers in product evaluation," Mr. Newman argues, based on their role in ensuring consistency, detecting flaws, and making determinations about market viability. *Id.* Finally, Mr. Newman states that Dr. Miller is wrong to suggest that "post-bottling consumer acceptance should override internal quality control," which would "def[y] standard production protocol." *Id.* Mr. Newman then asserts that NVD "performed that exact due diligence," by "identifying barrels unfit for release through a rigorous, documented

8

tasting process." *Id.*

The Court finds that Mr. Newman's rebuttal of Point 5 must be excluded. Although he sufficiently explains that Wild Turkey and Laphroaig are intentionally distilled to carry a smoky flavor, he offers no basis for his assertion that the smoky character in NVD's barrels "was the result of uncontrolled wildfire exposure." *Id.* Nor has NVD provided any basis on which Mr. Newman is qualified to explain how smoke could penetrate a barrel.

### c. Point 8

The Court also excludes Mr. Newman's rebuttal of Dr. Miller's "Point 8." Mr. Newman asserts that "widespread and observable industry realities" contradict Dr. Miller's assertion that sealed barrels cannot be impacted by environmental smoke due to diffusion limits. Newman Rebuttal Report at 2. He cites the concept of "angel's share," the evaporation of spirits through the wood of a barrel, as a potential method for smoke compounds to be drawn into the interior of the barrel. *Id.* But his rebuttal offers no basis for applying angel's share to smoke taint. Nor does he provide a basis for the statement that because "maturation facilities are saturated with the scent of aging spirits," the "same mechanism" that allows this aroma to enter the warehouse allows "external compounds" like "wildfire smoke volatiles" to enter the barrels where spirits are aging. *Id.* Finally, Mr. Newman does not offer any methodology to explain his assertion that because barrels "can absorb ocean air compounds, it stands to reason they can absorb smoke particulates." *Id.* NVD's argument that Mr. Newman's experience qualifies him to rebut Dr. Miller's report fails given the nature of the scientific conclusions he asserts. There is no hard and fast rule requiring Mr. Newman's qualifications to match Dr. Miller's. *See Smivolits v. First Solar, Inc.*, No. CV12-00555-PHX-DGC, 2019 WL 6875492, at *14 (D. Ariz. Dec. 17, 2019). But Mr. Newman plainly "must lay the foundation for his opinions," *Hubbs v. Big Lots Stores, Inc.*, No. LACV1501601JAKASX, 2019 WL 12536593, at *3 (C.D. Cal. July 2, 2019), and he has not come close to doing so.

### C.    Donald Snyder

NVD designated economist Donald Snyder as its damages accounting expert. Nationwide argues Mr. Snyder's report should be excluded because it exhibits a "lack of independent

United States District Court
Northern District of California

verification." Dkt. No. 43 at 19. Specifically, Nationwide objects to Mr. Snyder's acceptance of information provided by Mr. Hartunian to develop his report, such as whether the sample in question was smoke tainted, the size and retail price of NVD's retail product, packaging per bottle, and total labor per barrel to create a retail product. *Id.* Mr. Snyder's reliance on information from Mr. Hartunian "render[s] his entire report tainted and misleading." *Id.* at 22. Nationwide asserts that Mr. Hartunian, in turn, relied on Mr. Newman's findings to provide Mr. Snyder with a list of smoke tainted stock. NVD counters that "expert testimony properly rests on assumed facts" and the facts that Mr. Snyder relied on here "are the same type as any accounting expert would rely in in calculating damages." Dkt. No. 45 at 6–7. It does not dispute that Mr. Snyder's damages calculates incorporate Mr. Newman's conclusions about smoke taint.

As the Supreme Court has observed, "[t]rained experts commonly extrapolate from existing data." *Joiner*, 522 U.S. at 146. The Ninth Circuit has held that "Rule 702's 'sufficient facts or data' element requires foundation, not corroboration." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). And, "[a]s in any damages case," an expert's damages calculation must "address a hypothetical world that never existed." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 968 (9th Cir. 2013). For this reason, disagreement with an expert's assumptions does not usually provide a basis for excluding his testimony. *Primiano*, 598 F.3d at 566 (where foundation is sufficient, the jury decides experts' credibility). The same is true here. Mr. Snyder's opinion incorporates assumptions as to the number of smoke-tainted barrels, which may or may not be based on Mr. Newman's tasting. The actual number of smoke-tainted barrels (if any) is simply a fact that NVD will have to prove at trial. Assuming NVD can lay the proper foundation to establish the number of damaged barrels, the Court will permit Mr. Snyder to opine on damages. *See Oracle Am., Inc. v. Google, Inc.*, No. C 10–03561 WHA, 2011 WL 5914033, at *1-2 (N.D. Cal. Nov. 28, 2011) (explaining "damages experts [may] rely on sources of information reasonably relied upon as long as the foundational facts are properly laid at trial," since the "traditional and correct way to proceed is for a foundational witness to testify first-hand at trial to the foundational fact . . . and to be cross-examined[,] [t]hen the expert can offer his or her opinion on the assumption that the foundational fact is accepted by the jury" (cleaned up)).

**D.    David Girbovan**

NVD retained David Girbovan to rebut the opinion of Nationwide's damages expert, Derek Groff.  Nationwide argues that Mr. Girbovan's opinion should be excluded for two reasons: (1) because it seeks to rehabilitate Mr. Snyder's initial flawed report, and (2) because in his critique of Mr. Groff's opinion, Mr. Girbovan relies on Mr. Snyder's report, which Nationwide claims is based on Mr. Newman's findings, which are excluded under *Daubert*.  Much like its arguments about Mr. Snyder, NVD argues that Mr. Girbovan's testimony is proper because damages experts may properly assume facts in forming their opinions.  And for the same reasons, the Court finds that Nationwide's arguments fail with respect to Mr. Girbovan.  *See Kilopass Tech., Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2012 WL 4497346, at *3 (N.D. Cal. Sept. 28, 2012) (finding that "damages expert report could be admissible if Kilopass is able to present the requisite underlying evidence at trial to lay a factual foundation for liability on which [the expert's] damages analysis rests.").

**E.    Shaun Loeffelman**

NVD retained scientist Shaun Loeffelman to "perform a technical and qualitative review of the testing and results" performed by ETS Laboratories.  *See* Dkt. No. 44-1, Declaration of Mordecai Boone ISO Nationwide's Motion to Exclude Plaintiffs' Retained Scientific and Claims Handling Experts ("Boone Decl. ISO Mot. to Exclude Scientific and Claims Experts") ¶ 2, Ex. A ("Loeffelman Report") at 3.  To do so, Mr. Loeffelman reproduced and compared ETS's testing results for samples of NVD's spirits taken before and after the 2020 wildfire.  *Id.* at 4–8.  He also reproduced and analyzed the findings of Nationwide's expert Tom Tiburzi.  *Id.* at 8–9.  After comparing these results, Mr. Loeffelman opined that ETS's tests of samples taken before and after the wildfire "show there are significant differences in the results," which "indicate an event occurred to impact the concentrations" of the compounds tested.  *Id.* at 10.  He then concludes that the differences in the results "are due to the exposure of smoke from the wildfire" in 2020.  *Id.*

Nationwide argues that Mr. Loeffelman's testimony should be excluded for three reasons: (1) he fails to consider key evidence, (2) his opinions on causation have no underlying methodology and are based instead on speculation, and (3) he lacks the required expertise and his

11

1   methodology is unreliable.  *See* Dkt. No. 44 at 10–13.  In opposition, NVD clarifies that concerns

2   about Mr. Loeffelman's causation opinions are unfounded because "he will not testify as to the

3   causation of the smoke taint."  Dkt. No. 46 at 11.  But, NVD argues, Nationwide's remaining

4   critiques go to the weight rather than admissibility of Mr. Loeffelman's testimony.  *Id.* at 13.

5        As to Nationwide's first argument, "district courts within and outside this district have

6   often concluded that experts' decisions about what data to use in their analysis bear on the weight,

7   not the admissibility, of expert testimony."  *Hamm v. Mercedes Benz USA, LLC*, 2021 WL

8   1238304, at *14 (N.D. Cal. Apr. 2, 2021) (collecting cases).  And having reviewed Mr.

9   Loeffelman's report, the Court finds that it is sufficiently based on his analysis of the ETS testing

10  results and underlying report by Mr. Tiburzi, as well as his experience in analytical testing and

11  data analysis, so as to be admissible under Rule 702.  The Court also finds that Mr. Loeffelman's

12  expertise in data analysis and analytical testing can help the jury track the complicated testing

13  results produced by ETS.  The probative value of Mr. Loeffelman's analysis is not substantially

14  outweighed by the risk of unfair prejudice, confusion of the issues, or any other Rule 403 concern.

15  To the extent Nationwide fears that the jury will assign undue weight to Mr. Loeffelman's analysis

16  of the ETS testing or observations about Mr. Tiburzi's report, it can seek to undermine his

17  testimony through effective cross-examination.  *Primiano*, 598 F.3d at 564–65 ("Shaky but

18  admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the

19  burden of proof, not exclusion.").

20       The Court will not, however, allow Mr. Loeffelman to offer the new testimony presented

21  in his declaration.  While much of it reiterates points presented in his curriculum vitae or his

22  report, the Court finds that it also includes statements offered for the first time in opposition to

23  Nationwide's motion to exclude his testimony.  For example, Mr. Loeffelman's report states that

24  ETS's analytical methods were "appropriate, scientifically sound, and properly executed, and the

25  data accurately represented the chemical composition of the samples tested."  *See* Dkt. No. 47-6,

26  Declaration of Shaun Loeffelman ISO Plaintiffs' Opp. to MSJ, ¶ 5.  This statement about the

27  validity of ETS's testing methods is nowhere to be found in his report.  Mr. Loeffelman also

28  asserts that "the magnitude of the increases [in guaiacol and cresol exhibited in ETS's results]

United States District Court
Northern District of California

1    reflected a measurable chemical change in the tested spirits." *Id.* ¶ 7.  This latter statement, too,

2    goes further than his report, which only states that ETS tests reflect elevated levels of the

3    compounds in post-fire samples.  *See* Loeffelman Report at 4.  The Court therefore excludes the

4    new opinions in Mr. Loeffelman's declaration in their entirety.

5        **F.    Brian Eblen**

6        Brian Eblen was retained by NVD "to analyze third-party testing reports" and opine on

7    "the likelihood that smoke from the 2020 wildfires imparted chemical compounds in distilled

8    spirits."  *See* Boone Decl. ISO Mot. to Exclude Scientific and Claims Experts ¶ 4, Ex. C ("Eblen

9    Report") at 1.  Mr. Eblen draws on the findings of Mr. Loeffelman, as well as "draft reports from

10    the insured and third party experts" to conclude that the "difference in volatile compounds" in pre-

11    and post-fire distilled spirits are "due to the extended smoke exposure from the 2020 fires."  *Id.* at

12    2, 4.  He also appears to have relied on "third-party sensory analysis" that "indicated that exposure

13    to wildfire smoke affected [the spirits'] taste profiles, impairing [their] quality."  *Id.* at 4.  And he

14    opines that "exposure of extensive and prolonged wildfire smoke to spirits in permeable barrels

15    has the potential to contaminate the distilled spirits with low levels of toxic and/or carcinogenic

16    compounds."  *Id.*  Producers with "a good quality assurance function" would not release such

17    contaminated products to consumers, and he thus agrees with NVD's decision not to sell them.  *Id.*

18        Nationwide argues that Mr. Eblen's report suffers from the same defects as Mr.

19    Loeffelman's, and should be excluded for the same reasons.  According to Nationwide, he

20    uncritically adopted the opinions of other experts "without independent expert validation," and

21    cannot testify on causation because his opinion for this issue is "based solely" on Mr.

22    Loeffelman's analysis.  Dkt. No. Dkt. No. 49 at 15–16.  In its opposition, NVD argues that Mr.

23    Eblen is qualified to offer testimony on food contamination and product safety, and that his

24    adoption of other expert opinions is not a valid reason to exclude his report.  Dkt. No. 46 at 16–17.

25    As with its other experts, NVD submitted a new declaration by Mr. Eblen in its opposition to

26    Nationwide's motion to exclude.

27        Having reviewed the report, the Court finds that Mr. Eblen offers no substantive basis for

28    his opinion on causation, that is, his view that the differences in volatile compounds in pre- and

United States District Court
Northern District of California

13

post- fire samples "was due to" the 2020 fire. Eblen Report at 4. Similarly, he provides no basis for adopting third-party sensory analysis that "indicated that exposure to wildfire smoke affected its taste." *Id.* However, the Court finds that Mr. Eblen's opinion on the possibility that carcinogenic compounds from the 2020 wildfire smoke contaminated NVD's stock is sufficiently based on his review of literature and his own expertise to survive a *Daubert* challenge. Although this opinion is based on Mr. Eblen's assumption that smoke compounds could enter the barrels, that is simply a fact that NVD will have to prove at trial for the jury to credit this opinion. *See TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1027 (N.D. Cal. 2013) ("The Court will not exclude an expert report based on Sony's assumption which may be disproven at trial."). For the same reasons, the Court will allow Mr. Eblen to offer testimony regarding NVD's decision not to sell the allegedly contaminated spirits.

As to Mr. Eblen's declaration, the Court again finds that it offers new opinions that were not included in his report. *See* Dkt. No. 46-2, Declaration of Brian Shawn Eblen ¶¶ 6–8 (stating, for example, that increased levels of guaiacol and methylguaiacol "reflect a chemical change in the spirits' composition," that "these findings were consistent with a direct physical impact on the product," and that "such measurable chemical alteration and smoke-derived compounds would be considered unfit for consumer sale or consumption under. FDA and USDA contamination standards"). This is sandbagging, plain and simple. NVD simply cannot properly offer brand-new opinions at this very late stage. Accordingly, the Court excludes the new opinions under Rule 37.

### G. Arthur Hartunian

Mr. Hartunian, NVD's owner, also submitted a declaration to support the distillery's opposition to Nationwide's motion for summary judgment. *See* Dkt. No. 47-4, Declaration of Arthur Hartunian ISO Opp. to MSJ. For the most part, the declaration includes statements that are well within Mr. Hartunian's percipient knowledge. For example, he testifies as to the duration of the 2020 wildfires and the smoky atmosphere they created in his distillery. S*ee* Hartunian Decl. ¶¶ 16–17. And he testifies to his understanding of how NVD's insurance claim was handled. *Id.* ¶¶ 27–34. But Mr. Hartunian also proffers testimony on issues clearly not within his percipient knowledge. For example, he testifies that "as smoke blew over the barrels, it continuously

14

United States District Court
Northern District of California

deposited guaiacol and creosol [] over their exposed surfaces, which was in turn absorbed and transferred by the alcohol permeating the barrels' walls back into the aged spirits." *Id.* ¶ 22. He also testifies that the smoke-tainted barrels were "no longer safe for human consumption." *Id.* ¶ 23. Although he was designated as an expert, Mr. Hartunian did not write an expert report, and he offers no basis for these inherently scientific opinions. The Court excludes these opinions, which go well beyond his experience, are unsupported by any methodology, and were not close to being timely disclosed.

*    *    *

In sum, the Court **GRANTS IN PART AND DENIES IN PART** Nationwide's motions to exclude NVD's expert witnesses. The Court excludes the reports of Mr. Newman, Mr. Snyder, and Mr. Girbovan in their entirety. The Court also excludes Mr. Loeffelman's testimony to the extent he seeks to opine on causation, and Mr. Eblen's testimony to the extent is based on Mr. Loeffelman's opinions about causation or Mr. Newman's tasting impressions. Finally, the Court excludes each of the late-filed declarations from NVD's expert witnesses discussed above. And the Court excludes Mr. Hartunian's declaration to the extent it draws "scientific and safety conclusions . . . that are not within Mr. Hartunian's personal knowledge and statements which he is not competent to personally make under oath." Dkt. No. 48 at 18.[6]

## III.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*

---

[6] The Court will address Defendant's motion regarding Janice Ramsey in a separate order.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quotation omitted). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## B.    Discussion

Nationwide seeks summary judgment on each of NVD's claims, as well as its request for punitive damages.

### i.    Breach of Contract Claim

The elements of a breach of contract claim are: (1) the existence of a contract; (2) plaintiff's performance of the contract; (3) defendant's breach of the contract; and (4) damages to plaintiff resulting from the breach. *See Abdelhamid v. Fire Ins. Exchange*, 182 Cal. App. 4th 990, 999 (2010). "[A]bsent an actual withholding of benefits due, there is no breach of contract." *Dalrymple v. United Serv. Auto. Assn.*, 40 Cal. App. 4th 497, 512 n. 4 (1995). Nationwide argues that summary judgment is proper because NVD cannot prove a breach or prove damages with sufficient specificity.

#### a.    Contract Provisions

The "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) (citation omitted). Policy exclusions are interpreted narrowly against the insurer. *Id.* at 648. "[C]lauses identifying coverage are interpreted broadly."

1     *Garvey v. State Farm Fire & Cas. Co.*, 48 Cal. 3d 395, 406 (1989) (citation omitted).

2          Under the policy, Nationwide agreed to "pay for direct physical loss of or damage to

3 Covered Property at the premises described in the Declarations caused by or resulting from any

4 Covered Cause of Loss." Holland Decl. ¶ 4, Ex. A at 33. The policy includes a "Causes of Loss –

5 Special Form" which states: "When Special is shown in the Declarations, Covered Causes of Loss

6 means direct physical loss unless the loss is excluded or limited in this policy." *Id.* at 66. The

7 Declarations are followed by a "Commercial Property Schedule of Insureds." *See generally, id.* at

8 9–14. Each item of property listed in the Commercial Property Schedule includes a line indicating

9 "Special – Cause of Loss." *Id.* at 12–14. At the hearing, Nationwide conceded that NVD was

10 covered under an all-risk policy, and that the "Special – Cause of Loss" Form applied.

**b. Burden of Proof**

12          As a threshold matter, the parties dispute NVD's burden of proof under California law.

13 Nationwide argues that it is the insured's burden to show its claim came within the insuring

14 clause, and that under the plain language of the policy, NVD must establish two key elements: (1)

15 that it suffered a "direct physical loss" and (2) that the damage was caused by the 2020 wildfire

16 smoke. Dkt. No. 42-1 at 18–24. NVD asserts that because its policy with Nationwide was an "all-

17 risk" policy, all it must show is that a physical loss occurred to the covered property. Dkt. No 47

18 at 24. Therefore, NVD argues, once it shows the spirits experienced a physical change and a

19 resulting loss of value, the burden shifts to Nationwide to show an exclusion. *Id.* at 25.

20          "When an issue of coverage exists, the burden is on the insured to prove facts establishing

21 that the claimed loss falls within the coverage provided by the policy's insuring clause. . . . Once

22 the insured has made that showing, the burden is on the insurer to prove the claim is specifically

23 excluded." *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.*, 187

24 Cal.App.4th 766, 777 (2010). But, as one California court of appeals explained, in an action

25 concerning an all-risks policy, unlike in a case involving a specific peril policy:

26              [T]he insured does not have to prove that the peril proximately
             causing his loss was covered by the policy. This is because the policy
27              covers *all risks* save for those risks specifically excluded by the
             policy. The insurer, though, since it is denying liability upon the
28              policy, must prove the policy's noncoverage of the insured's loss—

United States District Court
Northern District of California

1    that is, that the insured's loss was proximately caused by a peril
     specifically excluded from the coverage of the policy.

2    *Strubble v. United Servs. Auto. Ass'n*, 35 Cal. App. 3d 498, 504 (1973); *see also Central Nat. Ins.*

3    *Co. of Omaha v. Prudential Reinsurance Co.*, 241 Cal. Rptr. 773, 780 (1987) ("In actions upon

4    all-risks policies, the burden is on the insurer to prove that an excepted risk caused the loss, *or the*

5    *occurrence of a condition subsequent*") (emphasis added).  "[T]he question of what caused the

6    loss is generally a question of fact."  *State Farm Fire & Cas. Co. v. Von Der Lieth*, 54 Cal. 3d

7    1123, 1131 (1991).  Thus, the jury's task in cases involving an "all-risk" property insurance policy

8    is to determine the "efficient proximate cause," *i.e.*, the "predominant" cause of the loss to resolve

9    the coverage dispute.  *Garvey*, 48 Cal. 3d at 402–03.

10    Cases concerning all-risk policies often involve disputes about causation, typically with the

11    insurer arguing that the loss was caused by an excluded peril.  For example, the *Strubble* court

12    considered an all-risk homeowner's policy that included an earthquake endorsement.  *See* 35 Cal.

13    App. 3d at 502, 504.  The house was perched on a cliff that had experienced landslides in the past.

14    After a minor earthquake, the plaintiffs noticed a crack in the ground under the house, which

15    caused damage to the property.  The parties disputed whether the cause was the earthquake, which

16    was covered under the policy, or other earth movement, which was excluded from coverage.  The

17    court of appeal upheld the trial court's instruction to the jury that the insurer had the burden to

18    show that the loss was proximately caused by an excluded peril.  *Id.* at 504–05.

19    Similar issues were presented in *Vardanyan v. AMCO Insurance Company*, 243 Cal. App.

20    4th 779 (2015).  There, the plaintiff owned a rental house and sought coverage for a collapse.[7]  *Id.*

21    at 782.  The parties disputed whether the collapse was due to water damage and other non-covered

22    causes, or whether it was caused by another covered risk.  *Id.* at 783.  The policy's insuring clause

23    covered "risk of direct physical loss to the property . . . except collapse other than as provided in

24    Other Coverage 9."  *Id.* at 785.  The "Other Coverage 9" section stated "We insure for risk of

25    direct physical loss to covered property involving collapse of a building or any part of a building

26    caused only by one or more of the following . . . hidden decay . . . hidden insect or

27    _____

28    [7] During the hearing, the parties agreed that the principles governing "all risk" policies are the
     same whether the covered property is a home or a business.

*United States District Court*
*Northern District of California*

vermin . . . weight of contents equipment animals or people . . . " *Id.* Even though the plaintiff had an all-risk policy, the defendant argued it was the insured's burden to prove that his loss fell within the "Other Coverage 9" provision, rather than requiring the insurer to show that the loss was excluded. The trial court adopted the defendant's proposed burden of proof in its instructions to the jury. The court of appeal reversed. *Id.* at 796. Relying on *Strubble*, model jury instructions for all-risk coverage disputes, and other cases involving all-risk policies, the court found that the defendant's proposed contract interpretation would improperly "contract around the efficient proximate cause doctrine." *Id.*

Unlike in *Strubble* and *Vardanyan*, however, Nationwide did not deny coverage here based on any purported exclusion. Rather, it argues that NVD cannot meet its initial burden to prove coverage under the insuring clause. Nationwide is correct that the insuring clause triggers a two-step inquiry, requiring a showing that insured suffered (1) a direct physical loss (2) that was caused by a Covered Cause of Loss. Here, the "Covered Causes of Loss – Special Form" defines "Covered Causes of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." So on its face, the Policy specifies that a "Covered Cause of Loss" includes any non-excluded cause, period. The Ninth Circuit has held that courts "must interpret an insurance policy 'as a whole, in a manner which gives force and effect to every clause.'" *Lakeside Non-Ferrous Metals, Inc. v. Hanover Ins. Co.*, 172 F.3d 702, 705 (9th Cir. 1999) (quoting *Martin Marietta Corp. v. Ins. Co. of N. Am.*, 40 Cal. App. 4th 1113, 1122 (1995). Regardless, even assuming (without definitively deciding at this stage) that NVD must prove causation, the Court finds that issues of fact preclude summary judgment.

### c.  There Are Genuine Issues of Fact As To Whether the Spirits Experienced "Direct Physical Loss or Damage"

"Under California law, direct physical loss or damage to property requires a distinct, demonstrable, physical alteration to property." *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 15 Cal. 5th 1106, 1117 (Cal. 2024). "The physical alteration need not be visible to the naked eye, nor must it be structural, but it must result in some injury to or impairment of the property as property." *Id.*

The Court finds that there is a genuine issue of fact as to whether the spirits experienced direct physical loss. Nationwide argues that Plaintiffs "failed to produce *any* admissible evidence that a distinct physical alteration occurred." Dkt. No 48 at 9. But its argument is largely premised on the assumption that it would succeed on its motions to exclude NVD's experts and their late-filed declarations. While it did prevail on those motions in part, Nationwide improperly asks the Court to draw inferences in its favor and discount the totality of the evidence. *Id.* at 11. NVD presents evidence of direct physical loss in the form of, for example, facts about the occurrence and duration of the fire, ETS laboratory testing showing three- to four-fold increases in key smoke compounds, and tasting notes from Nationwide's own consultant and from Mr. Hartunian. Drawing all inferences in NVD's favor, the Court finds that a reasonable jury could find based on the record presented that there was a physical change in the spirits.[8]

### d.  There Are Genuine Issues of Fact As To Causation

The Ninth Circuit has recognized that the determination of "proximate cause generally is an issue for the jury." *Commodities Reserve Co. v. St. Paul Fire & Marine Ins. Co.*, 879 F.2d 640, 644 (9th Cir. 1989). Only when "material facts are not at issue" may the Court settle the question as a matter of law. *Id.* at 645. Nationwide contends that NVD has presented no expert who provides a reasonable basis for finding causation. *See* Dkt. No. 48 at 14. Nationwide relies on several cases to argue that NVD must establish both general and specific causation, and that the evidence of specific causation must be "substantial." Dkt. No. 48 at 14.

As an initial matter, it is not clear to the Court that NVD must prove the specific scientific mechanism by which the smoke compounds would have entered the barrels. And the cases on which Nationwide relies concern negligence claims, and none arose in the insurance context. *See, e.g.*, *Leyva v. Garcia*, 20 Cal. App. 5th 1095, 1104 (2018) (tenant plaintiffs required to show "substantial" evidence that landlord's negligence caused fire, and could not do so when they failed to present triable issue of fact as to negligence); *see also Leslie G. V. Perry & Assoc.*, 43 Cal. App.

---

[8] Although Nationwide's mistrust of Mr. Hartunian could not be clearer, the Court may not make a credibility determination regarding his testimony at this stage. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.").

United States District Court
Northern District of California

4th 472, 482–483 (1996) (tenant who alleged sexual assault was caused by landlord's negligent failure to repair broken security gate could not satisfy obligation to prove causation where there was no evidence showing how perpetrator entered the property). The court in *Leslie G.* observed that the plaintiff could argue inferences from circumstantial evidence, so long as they were "more reasonable or probable" than inferences against her proffered theory of causation. *Id.* at 483. Ultimately, however, the plaintiff there failed because there "simply [was] no evidence from which to infer causation."[9] *Id.* at 484.

Unlike the plaintiff in *Leslie G.*, however, NVD has shown that there are triable issues of material fact as to causation. For example, the ETS laboratory tests results showed three- and four-fold increases in compounds associated with wildfire smoke in post-fire samples, while there were no such increases in those compounds in samples bottled before the fire. These laboratory tests were taken before the 2024 fire, providing a reasonable basis for a jury to infer that the later fire did not cause the injury. And NVD has presented evidence of methods by which these compounds could enter the barrels. For example, NVD presents evidence that many of barrels had open bungholes, directly exposing the spirits to smoke. *See* Dkt. No. 47-36 at Nationwide0002462. And although NVD cannot rely on Mr. Newman for his testimony, it may call, for example, Dr. Miller for testimony that the spirits' alcohol molecules could have absorbed these volatile compounds when they came into contact with the barrel staves, transferring them back into the barrel. *See* Dkt. No. 47-9, Miller Dep. Vol. I at 30:19–23, 66:24–67:10, 154:7–11, 156:17–24; *see also* Dkt. No. 47-13, Miller Dep. Vol. II at 238:17–239:1, 241:20–24, 252:20–253:4, 325:9–21, 326:8–11. A reasonable jury could credit this evidence as a plausible explanation for the increase in volatile compounds that would not have occurred in the absence of the 2020 fire. Drawing all inferences in NVD's favor, a reasonable jury could find based on the record presented that it was the 2020 fire that caused a physical change in the spirits. Although

---

[9] Notably, the court of appeal also observed that "[i]n California, very little has been written about the specific sort of proof it takes to establish causation in a negligence action against a landowner arising out of a third party's criminal or negligent conduct." *Leslie G.*, 43 Cal. App. 4th at 484. So too, here. The parties have not distilled the burden of proof *in insurance cases* to establish causation, nor has the Court found much written on this either. To the extent the parties bring this case to trial, they will need to elucidate the order and burden of proof.

United States District Court
Northern District of California

this evidence is not overwhelming, there is enough to overcome Nationwide's motion for summary judgment.

Because genuine issues of fact exist as to both covered loss and causation, the Court **DENIES** summary judgment on the breach of contract claim.

### e.   Plaintiff Has Presented Sufficient Evidence to Create a Triable Issue of Fact As To Damages

Nationwide next argues that NVD's breach of contract claim fails because its "claimed damages are entirely speculative and unsupported." Dkt. No. 42-1 at 25. Nationwide argues that NVD's discovery responses exhibit an "ever-changing quantification" of its losses. *Id.* In opposition NVD asserts that a "precise calculation" of damages was determined by both Mr. Snyder and Mr. Groff, Nationwide's damages expert. Dkt. No. 47 at 28. It is undisputed that, under the terms of the policy, any "Irreplaceable Bulk Spirits that were lost or damaged would be compensated at the net retail price of equivalent bottle spirits." *Id.* And although Mr. Snyder's opinions are based on assumptions that will need to be proven at trial, that does not make his calculations inherently speculative. The Court therefore finds that NVD has presented sufficient evidence to create a triable issue of fact as to damages. Accordingly, the Court **DENIES** summary judgment on the breach of contract claim based on Nationwide's damages arguments.

### C.   Breach of Covenant of Good Faith and Fair Dealing

A covenant of good faith and fair dealing is implied in every contract, including insurance contracts. *See Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007). The implied covenant "requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits." *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal. 3d 208, 214 (1986). To fulfill this implied obligation, an insurer "must give at least as much consideration to the interests of the insured as it gives to its own interests." *Id.*

Nationwide argues that summary judgment is proper on NVD's breach of the covenant of good faith and fair dealing claim because a genuine dispute means there could be no bad faith as a matter of law. The genuine dispute rule allows courts to grant summary judgment when there is no dispute that the insurer's basis for denial of coverage was reasonable. *See Amadeo v. Principal*

*Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002). However, the rule "does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *Wilson*, 42 Cal. 4th at 723.

The Court finds that factual issues regarding Nationwide's investigation preclude summary judgment based on the genuine dispute doctrine. For example, NVD has presented evidence from which a jury could reasonably conclude that Nationwide ignored the written report of its own investigator, Tom Tiburzi, who identified certain barrels as smoke tainted. *See* Dkt. No. 47-36. Mr. Tiburzi later tried to walk back his conclusion at his deposition, stating that his report indicated only that further investigation was needed because he had a "suspicion" of smoke taint. But as NVD correctly points out, "a jury would be entitled to doubt the credibility" of Mr. Tiburzi's explanation. NVD has also presented evidence supporting an inference that, even after acknowledging tests showed the spirits were not fit for sale, Nationwide refused to order additional tests. *See* Dkt. No. 47-10 at Nationwide000056. And as NVD points out, even Nationwide's own experts could not rule out that the spirits were tainted by wildfire smoke, and they acknowledge that gas chromatography and mass spectrometry tests—like those taken by ETS—can also be used to quantify levels of guaiacol and creosol. *See* Dkt. No. 47-13, Miller Dep. Vol. II at 319:15-24; *see also* Dkt. No. 47-15, Hervé Dep. at 21:2-7, 25:2-3, 49:16-20, and 155:14-156:5. The weight and credibility of this evidence is for the jury to determine. *See Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 350 (2001), *as modified on denial of reh'g* (July 30, 2001) ("an insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind"). Accordingly, the Court **DENIES** summary judgment on the claim for breach of covenant of good faith and fair dealing. [10]

---

[10] Nationwide also argues summary judgment is proper on this claim because it has shown there was no breach of contract, so that there could be no claim of bad faith under California law either. Because the Court finds there is a genuine dispute of material fact with respect to NVD's breach of contract claim, Nationwide is not entitled to summary judgment on this claim on this basis.

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.    Punitive Damages

Finally, Nationwide moves for summary judgment on NVD's request for punitive damages.  Dkt. No. 42-1 at 30.  Specifically, Nationwide argues that NVD cannot prove by clear and convincing evidence that it acted with oppression, fraud, or malice.  *Id.* at 31.  In opposition, NVD argues that Nationwide's denial of coverage "was not merely unreasonable, but was carried out with conscious disregard of NVD's contractual and legal rights."  Dkt. No. 47 at 30.

A breach of contract, even a willful and tortious one, does not provide a basis for punitive damages.  *See Tomascelli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1286 (1994).  Such damages are recoverable only if a plaintiff can show a defendant's acts are "reprehensible, fraudulent[,] or in blatant violation of law or policy" by evidence that is "sufficiently strong to command an unhesitating assent of every reasonable mind."  *Id.* at 1288; *see also Conservatorship of Wendland*, 26 Cal 4th. 519, 522 (2001) ("[t]he 'clear and convincing evidence' test requires a finding of high probability, based on evidence so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind.").

Recognizing the different standards for establishing claims for bad faith and punitive damages, courts have typically only allowed punitive damages against insurance companies when there are "established policies or practices in claims handling which are harmful to insureds." *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 329 (1992); *see also Hangarter*, 373 F.3d at 1013–14 (noting punitive damages are available against insurance companies where there is sufficient evidence of a "conscious course of conduct, firmly grounded in established company policy").  And courts regularly note that a plaintiff seeking to prove punitive damages must offer more than the same facts supporting a claim for bad faith.  *See Praetorian Ins. Co. v. Western Milling, LLC*, No. 1:15–cv–00557–DAD–EPG, 2017 WL 4284717, at *10 (E.D. Cal. Sept. 27, 2017) (granting summary judgment on punitive damages where insured "in large part relies on the same facts and evidence which support its bad faith claim in attempting to establish a triable issue of fact with respect to its punitive damages claim."); *see also Fleming v. Safeco Ins. Co.*, 160 Cal. App. 3d 31, 44 (Cal. Ct. App. 1984) ("[W]e hasten to point out that bad faith does not necessarily indicate the presence of malice, oppression, or fraud.").

NVD points to various facts in the record to support its punitive damages claim. Specifically, NVD asserts that Nationwide ignored facts supporting coverage, including its 2017 coverage of similar loss due wildfire smoke, ETS's laboratory testing showing elevated levels of known smoke-taint markers, and acknowledgment by its own experts that smoke taint could plausibly have caused the loss. *Id.* NVD's opposition is light on citations to the record, but it asserts that rather than provide coverage or continue investigating, Nationwide "shut down its investigation, suppressed internal finding that supported coverage, and falsely accused its insured of fraud." *Id.*

The Court observes that NVD relies on much of the same evidence to support its claim of bad faith and punitive damages. But, unlike cases where courts have granted summary judgment on such grounds, here, NVD also claims that Nationwide "suppressed" evidence that would have supported coverage. For example, NVD offers evidence that Nationwide sought to hide Mr. Tiburzi's findings, which were never memorialized in a final report, and refused to provide his draft report for months during the litigation. Dkt. No. 47 at 14. Viewed most favorably to NVD, there is sufficient evidence that the denial of the claim "was not simply the unfortunate result of poor judgment," but resulted instead from Nationwide's "deliberate restriction of its investigation in a bad faith attempt to deny benefits due." *Amadeo*, 290 F.3d at 1165. Again, Plaintiff does not appear to have an overwhelming, or even strong, punitive damages case, but it benefits at the summary judgment phase from the inferences drawn in its favor. There is enough at this stage to create a triable issue of fact as to whether Nationwide's practices were "willful and rooted in established company practice." *Id.* (internal citations omitted). Accordingly, the Court **DENIES** Nationwide's motion for summary judgment as to punitive damages. Whether the jury will find Plaintiff's position persuasive, and whether this claim is likely to survive a directed verdict motion, are issues for a later day.

//

//

//

## IV.    CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Nationwide's motions to exclude NVD's experts, Dkt. Nos. 43 and 44.  The Court will address Defendant's motion regarding Janice Ramsey, Dkt. No. 44, in a separate order.  The Court also **DENIES** Nationwide's motion for summary judgment, Dkt. No. 42.

**IT IS SO ORDERED.**

Dated: December 31, 2025

HAYWOOD S. GILLIAM, JR.
United States District Judge